597 So.2d 952 (1992)
In the Interest of D.P., a child, Appellant,
v.
STATE of Florida, Appellee.
In the Interest of G.M., a child, Appellant,
v.
STATE of Florida, Appellee.
Nos. 91-2030, 91-2772.
District Court of Appeal of Florida, First District.
May 11, 1992.
*953 Nancy A. Daniels, Public Defender, Nancy L. Showalter, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Wendy S. Morris, Asst. Atty. Gen., Tallahassee, for appellee.

ON MOTION FOR CLARIFICATION
MINER, Judge.
Appellee, State of Florida, has moved for clarification of the prior opinion issued in these consolidated cases. We grant the motion for clarification, withdraw our previous opinion and substitute the following therefor.
Appellants D.P. and G.M. challenge their adjudications of delinquency for escape pursuant to Section 39.061, Florida Statutes (Supp. 1990). By order of the circuit court issued June 20, 1991, appellant D.P. was found to have violated Section 812.014(2)(c)4, Florida Statutes (grand theft auto) and Section 39.061, Florida Statutes (juvenile escape statute). D.P. had escaped from the Leon County Start Center, a residential commitment facility. By order of the circuit court issued August 1, 1991, appellant G.M. was found to have committed an escape in violation of Section 39.061. G.M. had escaped from the Criswell Halfway House, also a residential commitment facility. On appeal, appellants contend that Section 39.061 is constitutionally infirm as an invalid delegation of legislative authority in contravention of Article II, Section 3, Florida Constitution, and, further, that it is unconstitutionally vague. Concluding that that portion of the juvenile escape statute pertaining to appellants' escapes from residential commitment facilities is indeed violative of Article II, Section 3 of the Florida Constitution, we reverse appellants' adjudications of delinquency for escape. In view of this disposition, we find it unnecessary to reach appellants' vagueness claims.
The statute in question and under which appellants were adjudicated delinquent provides:
An escape from any secure detention or any residential commitment facility of restrictiveness level VI or above maintained for the treatment or rehabilitation of children found to have committed delinquent acts or violations of law constitutes *954 escape within the intent and meaning of s. 944.40 and is a felony of the third degree.
The term "restrictiveness level" is defined in Section 39.01(61), as follows:
"Restrictiveness level" means the identification of broad custody categories for committed children, including nonresidential, residential, and secure residential. Specific placement in restrictiveness levels within these categories depends upon the risk and needs of the individual child. Restrictiveness levels must be established by the department by rule, provided, however that there shall be no more than eight levels.
§ 39.01(61), Fla. Stat. (Supp. 1990).
Within this newly enacted statutory framework, the Department of Health and Rehabilitative Services (HRS) promulgated Florida Administrative Code Rule 10M-32.001 which created a regulatory scheme applicable to residential commitment facilities, consisting of four restrictiveness levels: (1) non-residential programs (Level 2); (2) low-risk residential programs (Level 4); (3) moderate risk residential programs (Level 6); and (4) high risk residential programs (Level 8). The rule also describes the characteristics of the programs at each restrictiveness level.
Article II, Section 3, of the Florida Constitution mandates that "[n]o person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." Under this constitutional provision the legislature is prohibited from conferring upon administrative agencies authority which the constitution assigns exclusively to the legislature itself. Florida State Bd. of Architecture v. Wasserman, 377 So.2d 653, 655 (Fla. 1979).
Under this doctrine fundamental and primary policy decisions shall be made by members of the legislature who are elected to perform those tasks, and administration of legislative programs must be pursuant to some minimal standards and guidelines ascertainable by reference to the enactment establishing the program.
Askew v. Cross Key Waterways, 372 So.2d 913, 925 (Fla. 1978).
Pursuant to this doctrine, statutes granting enforcement power to administrative agencies must clearly announce adequate standards to guide the agencies in the execution of the powers delegated so as to preclude the agency from acting through whim, showing favoritism, or exercising unbridled discretion. Lewis v. Bank of Pasco County, 346 So.2d 53, 55-56 (Fla. 1976). "The legislature, however, may validly delegate to agency officials the authority to promulgate subordinate rules within proscribed limits and to determine the facts to which established policies of legislation are to apply so long as the agency is not delegated the authority to determine what the law shall be." In re Advisory Opinion to the Governor, 509 So.2d 292, 311 (Fla. 1987) (citing Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974); Florida Welding & Erection Service, Inc. v. American Mutual Insurance Co., 285 So.2d 386 (Fla. 1973)).
The requirement that statutory enactments provide adequate standards and guidelines to executive agencies has been tempered, however, by certain policy considerations. "The exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulating enactments under the police power." Dickinson v. State, 227 So.2d 36, 37 (Fla. 1969).
The general rule, which requires an express standard to guide the exercise of discretion is also subject to the exception that where it is impracticable to lay down a definite comprehensive rule, such as where regulation turns upon the question of personal fitness, or where the act relates to the administration of a police regulation and is necessary to protect the general welfare, morals, and safety of the public, it is not essential that a specific prescribed standard be expressly stated in the legislation. In such situations the courts will infer that the standard of reasonableness is to be applied.
North Broward Hospital District v. Mizell, 148 So.2d 1, 4, n. 11 (Fla. 1962) (quoting 1 Am.Jur.2d Administrative Law § 116); see also Department of Business *955 Regulation, Division of Alcoholic Beverages and Tobacco v. Jones, 474 So.2d 359 (Fla. 1st DCA 1985); Florida Waterworks Assoc. v. Florida Public Service Comm'n, 473 So.2d 237, 245 (Fla. 1st DCA 1985).
Reading secs. 39.061 and 39.01(61) in pari materia, as we must, we find that insofar as they pertain to residential commitment facilities, they do not contain standards sufficiently explicit to inform the discretion of the agency charged with administering them thereby rendering them vulnerable to challenge under the nondelegation doctrine. In criminalizing escape from residential facilities of restrictiveness level VI or above, the legislature neglected to provide adequate guidance as to which of the broad custody categories shall be classified as restrictiveness level VI institutions. Although a reasoned, common sense interpretation of the statutory scheme in question would suggest that a level I facility would be less restrictive than a level VIII facility, this implied "guideline," in our view, falls considerably short of providing the legislatively articulated standards required by Article II, Section 3. The statute does not mandate that all residential facilities shall be level VI or above. Indeed, it does not require that any residential facility shall be classified as level VI or above. In fact, HRS could have, in full conformity with the statutory language, decided that no nonresidential or residential facility should be classified as level VI or higher, thereby decriminalizing juvenile escape from residential programs altogether. The only substantive standard provided by the statute is the provision that escape from nonresidential facilities may not be criminalized by classifying such facilities as level VI or above. Therefore, in our view, the juvenile escape statute grants HRS the unbridled, unadvised discretion to say what the law of juvenile escape from residential facilities shall be. Such is not constitutionally acceptable. Moreover, in a constitutional sense, it does not matter that HRS may have exercised its delegated authority in a prudent manner. It may very well have done so. However, the validity of the power sought to be vested must be measured by the scope of the grant of power, not the extent to which it has been exercised. Lewis, 346 So.2d at 55.
As stated previously, we are cognizant that the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in the delegation of legislative authority under the police power. Dickinson, 227 So.2d at 37. However, the relaxed standard of delegation employed with respect to enactments under the police power is generally confined to those situations where it is impracticable to lay down a definite comprehensive rule, such as where regulation turns on a question of personal fitness, or where the act relates to the administration of a police regulation necessary to protect the general welfare, morals, and safety of the public. See, North Broward Hospital District v. Mizell, 148 So.2d 1, 4, n. 11. Where, as here, the subject statute operates upon fundamental personal rights, providing as it does for criminal penalties, the more exacting standard for legislative guidance should be employed. See generally, In the Interest of R.W., 495 So.2d 133 (Fla. 1986); cf., Clark v. State, 395 So.2d 525 (Fla. 1981) (applying a relaxed standard to a penal statute prohibiting the introduction of contraband into prisons, but noting the adequacy of the guidelines because the legislature specifically outlined what shall constitute contraband).
To paraphrase the standard articulated by the Florida Supreme Court in Chiles, et al. v. Children A, B, C, D, E, and F, 589 So.2d 260 (Fla. 1991), we hold that Sections 39.061 and 39.01(61), Florida Statutes (Supp. 1990), constitute an unlawful delegation of legislative authority to an administrative agency because they allow the agency to criminalize escape from residential commitment facilities classified as restrictiveness level VI or higher without announcing standards or guidelines adequate to assist the agency in the determination of the type of facilities to be designated restrictiveness level VI or higher.
*956 REVERSED with directions that appellants be discharged from their adjudications of delinquency based upon escape.
SMITH and SHIVERS, JJ., concur.